Howard A. Levine, J.
The proceeding was originally initiated on the petition of the Schenectady County Department of Social Services for court approval, pursuant to section 384 of the Social *105 Services Law, of an unconditional written surrender for adoption of the child of the respondent, signed and acknowledged May 12, 1972. The child was born out of wedlock on March 13, 1971. At the return date of the petition, respondent appeared and in response to questions by the court indicated that she opposed court approval of the surrender and wished to revoke it on what might properly be characterized as grounds of coercion and mistake as to the legal effect of that instrument. The proceeding was thereupon adjourned to permit respondent to obtain counsel, and a Law Guardian was appointed to represent the interests of the infant.
Subsequently respondent appeared with counsel, who interposed a formal written answer to the petition, seeking affirmative relief in the form of an order declaring that the surrender was not the free act of the respondent and that it was therefore null and void.
Although physical custody of the child had been given to the petitioner by respondent, no request was made in the answer for an order restoring custody to her, nor does respondent now demand the return of the child. The child is presently in a foster home, but not as a preadoption placement which has been deferred by the petitioner pending determination of the instant proceeding.
The first issue that must be resolved is the validity of the instrument of surrender. • A caseworker in the Child Services Division of the petitioner described repeated discussions with respondent concerning surrender of the child. These discussions started even before the child’s birth when respondent sought preadoption casework services concerning the possibility of giving the child up for adoption. The discussions were resumed at respondent’s initiation after the birth of the child and following respondent’s marriage to a man who was not the child’s natural father. The proof established that respondent was experiencing considerable domestic turmoil in attempting to care for the child and to resolve marital difficulties with her new husband. These problems resulted in respondent’s temporarily placing the child with petitioner for foster care in November, 1971. Foster care was also necessary in April, 1972. During the entire period, respondent was receiving casework services and counseling in an effort to resolve her family problems, and these of necessity entailed a review of the alternatives concerning the future care of the cMld.
I found entirely credible the caseworker’s version of the facts that no coercion was employed in obtaining the surrender, and *106 that its legal effect was fully explored in painstaking fashion on numerous occasions before respondent was permitted to sign it. This testimony was corroborated by the psychiatrist who treated her during her hospitalization in the Ellis Hospital Psychiatric Unit as well as on an out-patient basis. He related respondent’s real concern as to her ability to care for the child, and that she was aware that one alternative was giving it up for adoption. Unquestionably, respondent, a person characterized as mildly mentally deficient, was experiencing serious emotional stress during the period. However, her psychiatrist testified that she was not psychotic when he saw her in May of 1972, both before and after the surrender was executed, nor did respondent contend that she was incompetent at that time. Despondent’s assertion that she thought she was signing a “ paper ” to place the child solely for foster care was inconsistent with other assertions that she had been threatened if she failed to sign it, and admissions of previous discussions concerning the legal effect of a surrender. It was also inconsistent with the admitted fact that at the time respondent signed the surrender, her child was already in foster care pursuant to her previous written request for such services in April, 1972.
I therefore conclude that the unconditional surrender executed by respondent was valid as a knowing and voluntary act on her part. This does not completely dispose of the matter, however. Under numerous appellate cases decided both before and since the Court of Appeals’ decision in People ex rel. Scarpetta v. Spence-Chapin Adoption Serv. (28 N Y 2d 185 [1971]), it has been the law of the State of New York that a valid unconditional surrender such as that executed by respondent may be judicially revoked under certain circumstances. The criteria applied in these cases have been those contained in subdivision 1 of section 383 of the Social Services Law, namely that ‘ ‘ the interest of such child will be promoted thereby and that such parent is fit, competent and able to duly maintain, support and educate such child. ”
In applying this test, revocation has been denied where the mother was financially unable to care for the child (People ex rel. Anonymous v. Perkins Adoption Soc., 271 App. Div 672 [2d Dept., 1947]); where time had elapsed and no definite plans had been established by the mother for living arrangements and care of the child (People ex rel. Doe v. Edwards, 31 A D 2d 64 [1st Dept., 1968]); where there was “ grave doubt ” that the mother had stabilized her relationship or had become stable in her own mind (People ex rel. Anonymous v. New York Foundling Hosp., 17 A D 2d 122 [1st Dept., 1962]); where the mother’s *107 plans for support and care were indefinite (People ex rel. Wessell v. New York Foundling Hosp., 36 A D 2d 936 [1st Dept., 1971]); and where custody ‘ ‘ may expose the child to the antipathy of the father and the fruits of a frustrating, unsatisfactory and turbulent, illicit relationship, giving rise to emotional symptoms and reactions which will be inevitably visited upon the child. ” (Matter of Roe v. New York Foundling Hosp., 36 A D 2d 100, 105 [1st Dept., 1971]).
It is true that in each of the foregoing cases, as well as in Scarpetta (28 N Y 2d 185, supra), the court had before it not only the question of whether the surrender should be undone, but also the natural mother’s request for the immediate return of the child from the hands of prospective adoptive parents. Here, immediate custody is not being sought by respondent and the petitioner has withheld adoptive placement pending determination of this proceeding. Nevertheless, by the very nature of the legal effect of the surrender and its role in the adoption process and because of the special responsibility of the court toward the surrendered child, the issue of fitness of the mother is relevant and material in the instant proceeding and must be explored.
As has been pointed out by the Appellate Divisions of two Judicial Departments, in People ex rel. Anonymous v. Perkins Adoption Soc. (271 App. Div. 672 [2d Dept., 1947], supra) and People ex rel. Anonymous v. Saratoga County Dept. of Public Welfare (30 A D 2d 756 [3d Dept., 1968]), an absolute surrender for adoption constitutes a contract between the natural parent and the authorized agency, with mutual obligations regarding the child. The agency thereby commits itself to provide care and guardianship for the child in the place of the parent, and to take appropriate steps leading to adoption. The natural parent abandons the right to interfere in the care of the child and to prevent adoption by withholding the consent otherwise required under the law. Until formal adoption takes place, the legal relationship created by the surrender instrument remains exclusively between the natural parent and the agency. Indeed, as Scarpetta (28 NY 2d 185, supra) holds, the prospective adoptive parents have not even been given standing in a proceeding to revoke the surrender.
The cases, however, also stand for the proposition that the. State automatically becomes a party to the contract, and acts as parens patriae through judicial supervision of the surrender “ to do what is best for the interest of the child ” (People ex rel. Grament v. Free Synagogue Child Adoption Committee, 194 Misc. 332, 337 [Sup. Ct., 1949]). Since preadoptive placement *108 does not create any new legally cognizable relationships, the operative event for the imposition of this responsibility must be the execution of the surrender.
Moreover, the surrender created under section 384 of the Social Services Law was designed to form an integral statutory part of the adoption process where placement is made through an authorized agency, and thus to facilitate the orderly completion of that process in the best interests of the child. By means of the surrender device, the agency is permitted to match the child to prospective adoptive parents without interference from the natural parent; and the adoptive parents are likewise permitted to rely exclusively on the competence and good faith of the agency in accepting the child into their home and hearts. The statutory surrender instrument thus enhances prompt placement of the child and promotes desirable continuity of care leading ultimately to legal adoption by insuring that adoptive parents, will retain the child unless restoring it to the natural parent is in its best interest, and not upon the latter’s mere whim or change of heart. *
All of the foregoing purposes and effects of an unconditional surrender for adoption are just as applicable when, as in the . instant case, court approval of the surrender is being sought by the authorized agency before adoptive placement and opposed by the natural parent who wishes to retain parental rights, but not custody, as they are in the more typical case where such parent is seeking to regain both rights and custody after placement. Moreover, the reasons why the supreme considerations for the court must be that of the best interest of the child and the ability of the mother to provide proper care, are also equally important here; indeed, perhaps even more so. By respondent’s failure to seek immediate custody, she has impliedly admitted her inability to provide adequate care for her infant daughter at the present time. Nor did she present any persuasive evidence at the hearing that she will be able to provide such care in a stable, permanent home environment within the practicable future.. On the contrary, from both the testimony of her psychiatrist and of respondent herself, grave doubt exists as to whether in any foreseeable future time she could provide such care.
The psychiatrist characterized her as a person who is subject to wide swings of mood, particularly in response to stress. He *109 stated that as the child grows older, the demands of caring for it would subject her to more stress. Respondent herself admitted that she had attempted suicide at one point in the course of her family turmoil and she invoked her constitutional privilege against self incrimination in response to cross-examination concerning her treatment of the child.
To revoke the surrender would thus result in leaving the child in limbo for an indefinite period, until at some future time respondent might achieve sufficient stability to care for the child or when petitioner may be able to obtain sufficient evidence to satisfy the rigorous requirements for terminating parental rights on grounds of permanent neglect. In the meantime, the child will be growing older, with a corresponding diminution of its chances for successful placement for adoption. I cannot believe that such a result is consonant with the court’s statutory and common-law responsibilties to act as parens patriae for the best interests of the child surrendered.
I therefore find that the proof submitted totally overcame any presumption that the interests of the child would be served by restoring respondent to her full parental rights, and accordingly, respondent’s application for annulment of the surrender is denied, and said surrender is hereby approved pursuant to the provisions of subdivision 4 of section 384 of the Social Services Law.
In making the foregoing determination, I have not given effect to the 1972 amendments enacted by sections 1 and 2 of chapter 639 of the Laws of 1972 and now embodied in subdivision 5 of section 383 and subdivision 5 of section 384 of the Social Services Law. Respondent executed the surrender before the effective date of the amendments and, in any event, by their express terms they are applicable only after preadoption placement has been made.
The court wishes to express its appreciation for the vigorous and able representation of respondent’s interests by Helen Fox Chandellier, Esq. and Joseph Cairo, Esq. and similar services rendered on behalf of the infant by Edward Vacca, Esq. who was appointed as its Law Guardian.

 The provision for obtaining court approval contained in subdivision 4 of section 384 affords additional certainty in agency adoptions by foreclosing later challenges to the validity of the surrender. But approval is expressly not required for the surrender to be valid.